# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00082-SCT

*SUSAN RENEE LEE, GENERAL GUARDIAN OF EMILY RENEE LAWSON, A MINOR AND SOLE WRONGFUL DEATH BENEFICIARY OF RANDY CLAY LAWSON, DECEASED*

*v.*

*SHERIFF ANDREW THOMPSON, INDIVIDUALLY, SHERIFF ANDREW THOMPSON, IN HIS OFFICIAL CAPACITY AS SHERIFF OF COAHOMA COUNTY, THE COAHOMA COUNTY SHERIFF'S DEPARTMENT, TRACY A. VANCE, NORMAN HARRIS, JERRY HAMPTON, SAMMIE DAVIS, SABREA L. BROOM, ADDIE EVANS, RAECHELE D. SCOTT, AND EVERETT L. LANGDON, IN BOTH THEIR INDIVIDUAL AND OFFICIAL CAPACITIES*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2001 |
| TRIAL JUDGE: | HON. LARRY O. LEWIS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | H. WESLEY WILLIAMS, III |
| | JEFFREY STEPHEN MOFFETT |
| ATTORNEY FOR APPELLEES: | DAVID D. O'DONNELL |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 09/11/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. Aggrieved by the trial court's dismissal of her wrongful death suit brought on behalf of her minor daughter against various Coahoma County defendants as a result of the death of her minor daughter's father while he was an inmate at the Coahoma County Jail, Susan Renee Lee appeals to this Court. Finding no

reversible error, we affirm the judgment of the Circuit Court of Coahoma County, though for reasons different than those stated by the trial court.

## FACTS AND PROCEDURAL HISTORY[1]

¶2. Susan Renee Lee (Lee) is the former wife of Randy Clay Lawson (Lawson). Emily Renee Lawson (Emily), is the minor daughter of Lee and Lawson.

¶3. In the early morning hours of June 4, 1999, an extremely intoxicated Lawson appeared at Lee's home in an effort to reconcile. Not surprisingly, it did not work. An altercation erupted, and Lee requested assistance from a neighbor who then fell victim to Lawson's wrath, receiving several injuries inflicted by Lawson. Responding to a disturbance call as a result of the altercation, officials from the Coahoma County Sheriff's Department dutifully arrived at the Lee home, but Lawson, evidently unscathed from the incident, had by then left the scene. It took nothing more than a tag number and vehicle description for law enforcement to apprehend Lawson. By 6:20 a.m. on June 4th, two Coahoma County deputies arrived with Lawson at the Coahoma County Jail. According to the various pleadings, several witnesses verified that at the time Lawson arrived at the jail, he was "drunk and rowdy," but he was not injured. A little over nine hours later, at 3:40 p.m., Lawson was discovered dead – hanging from the top bunk in his jail cell.

¶4. Upon a petition being filed in the Chancery Court of Coahoma County on June 15, 1999, twelve days after Lawson's death, Maggie L. Baty (Baty), Lawson's mother, was appointed as administratrix of Lawson's estate by order entered the same day. The very next day, Baty commenced an action in Civil Action No. 14-CI-99-0038, on the docket of the Circuit Court of Coahoma County, *"Maggie L. Baty, Administratrix of the Estate of Randy C. Lawson and on behalf of all Wrongful Death*

---

[1]Since this case is before the Court on an appeal of the trial court's order granting a motion to dismiss, we glean these facts from the various pleadings in the record before us and accept the allegations as true for the purposes of this appeal.

*Beneficiaries, Plaintiff, versus Andrew Thompson, Sheriff of Coahoma County, Mississippi; John Doe(s), Jailer(s) of Coahoma County Jail; and Coahoma County, Mississippi, Defendants."* In this civil action, Baty asserted both federal and state claims against the defendants for "failing to prevent the suicide" of Lawson. The only reference to the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002 & Supp. 2003), is found in paragraph 11 (page 4) of the complaint, which states:

> The actions and/or inactions of the Defendants itemized and described hereinabove also constitute torts under state law. All such state claims will be itemized and specifically pled once the ninety (90) day period has run as required under Miss. Code Ann. § 11-46-11(1).[2]

The suit also sought, inter alia, $5,000,000 in compensatory damages from Sheriff Thompson, the John Doe jailers and Coahoma County (County).

¶5. On June 25, 1999, only nine days after Baty had commenced the civil suit as administratrix of Lawson's estate, the Chancery Court of Coahoma County, in a different cause from that of the estate matter, entered a decree, pursuant to a petition filed by Lee, appointing Lee as the general guardian of Emily's estate due to Emily's having an unliquidated claim for damages arising out of her father's death.

---

[2]Miss Code Ann. § 11-46-11(1) states in pertinent part:

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.....

Although Baty asserted in paragraph 11 of the complaint that she would itemize the state claims once this 90-day period had run, there is nothing in the record to indicate that she made any effort to comply with this statutory notice requirement "prior to maintaining [the] action."

¶6.     Although Emily had been born more than 11 months after the marriage of Lee and Lawson, Baty disputed the allegation that her son was Emily's father. Pursuant to a chancery court order entered in the estate cause on September 8, 1999, Lee and Emily submitted to DNA testing and ReliaGene Technologies, Inc. (ReliaGene) of New Orleans, Louisiana, performed the DNA analysis. The resulting ReliaGene report revealed that Emily was indeed Lawson's biological daughter.

¶7.     On March 23, 2000, Lee, as Emily's natural mother and as duly appointed general guardian of Emily's estate, filed in the chancery court estate cause a motion to have Baty removed as administratrix of Lawson's estate and to have Lee substituted as the administratrix. On April 13, 2000, Baty and Lee, by and through their respective counsel, agreed to the chancellor's entry of an order removing Baty and substituting Lee as the administratrix of Lawson's estate.

¶8.     Although we cannot ascertain the exact date from the record, we do know that somewhere along the way, the Coahoma County defendants removed the Baty action from circuit court to federal court. We find in the record an opinion dated August 14, 2000, and signed by the Honorable Neal B. Biggers, Jr., Chief Judge for the United States District Court for the Northern District of Mississippi.[3] Judge Biggers's opinion was entered pursuant to a previously filed motion to dismiss by the Coahoma County defendants, and in the opinion, reference is made to the fact that Lee was substituted for Baty as the administratrix of Lawson's estate and thereafter filed an amended complaint on May 18, 2000. Likewise, the federal court opinion sets out that the defendants were asserting that Lawson had hung himself while Lee on the other hand contended in her amended complaint that Lawson "was killed by the sheriff's department of Coahoma

---

[3]This opinion was entered in that certain case styled "*Susan Renee Lee, Administratrix of the Estate of Randy C. Lawson and on behalf of all wrongful death beneficiaries, Plaintiff v. Andrew Thompson, et. al., Defendants,*" and being cause number 2:99CV136-EMB on the docket of the United States District Court for the Northern District of Mississippi, Delta Division.

4

County by a severe beating administered by one or more deputies."[4] Judge Biggers found that Lee's amended complaint failed to sufficiently allege a 42 U.S.C. § 1983 claim against Coahoma County and Sheriff Thompson, and that as to the state law claims, Miss. Code Ann. § 11-46-9(1)(m) barred any claim against Sheriff Thompson and Coahoma County. Pursuant to the opinion and the same-day entry of a final judgment consistent with the opinion, Judge Biggers dismissed Lee's amended complaint with prejudice; however, by order dated October 20, 2000, the final judgment was amended to provide that the dismissal was without prejudice and that Lee would thus have thirty days from and after October 20, 2000, in which to file an amended complaint in the federal court action.

¶9.     Rather than filing an amended complaint in the federal court action pursuant to that court's order of October 20, 2000, Lee chose to instead file a new state court complaint. On March 28, 2001, 159 days after being allowed by the federal court to amend her federal court pleadings within 30 days, Lee opted to file this new action in the Circuit Court of Coahoma County. This cause was styled *"Susan Renee Lee, General Guardian of Emily Renee Lawson, A Minor and Sole Wrongful Death Beneficiary of Randy Clay Lawson, Deceased, Plaintiff vs. Sheriff Andrew Thompson, Individually, Sheriff Andrew Thompson, in His Official Capacity as Sheriff of Coahoma County, The Coahoma County Sheriff's Department, Tracy A. Vance, Norman Harris, Jerry Hampton, Sammie Davis, Sabrea L. Broom, Addie Evans, Raechele D. Scott, and Everett L. Langdon, in Both Their Individual and Official Capacities, and John Does 8-10, In Both*

---

[4]Although Dr. Steven Hayne performed the autopsy on Lawson on June 5, 1999, one day after his death, and although Lee later asserted that the autopsy revealed Lawson had numerous injuries, such as defensive posturing wounds and bruising at the base of the skull, which would be inconsistent with suicide, these facts were not alleged in the initial circuit court complaint filed on June 16, 1999.

*Their Individual and Official Capacities, Defendants,"* and was assigned cause number 14-CI-01-0028 on the docket of that court.

¶10.    In this new circuit court complaint, Lee alleged, inter alia, intentional acts by the Coahoma County defendants to kill Lawson and to destroy evidence. More specifically Lee asserted in her complaint claims of (1) assault and battery; (2) wrongful death; (3) outrage and/or infliction of emotional distress; (4) civil conspiracy and state constitutional claims; (5) gross negligence; (6) punitive damages; and, (7) vicarious liability.[5] A review of this complaint also reveals the following allegations:

> 41. Dr. Hayne noted that defensive posturing wounds could not be excluded as the cause of the wounds and that he had not been supplied with the ligature device alleged to have caused the injuries. Furthermore, there is no indication that Dr. Hayne was ever supplied with the orange jumpsuit, which Mr. Lawson was wearing at the time of his demise. In fact, this jumpsuit was suspiciously and wrongfully disposed of by the Sheriff's Department.

> 42. Dr. Hayne was also never supplied with the broken dental plate which was found next to Mr. Lawson's body. Both [two sheriff's deputies] specifically recall that this plate had the teeth smashed inward.

---

[5]This time around, Lee made it clear in the complaint that she was not asserting "any cause of action arising under federal law or the United States Constitution, nor is it [her] intention...to bring any such claim."

¶11. On April 23, 2001, all defendants joined together to file a motion to dismiss Lee's complaint.[6] As grounds for the motion, the defendants asserted, inter alia, (1) that Lee's claims were exclusively governed by the MTCA; (2) that the claims were barred by the applicable statute of limitations; (3) that Lee failed to timely file this action pursuant to the MTCA; (4) that the defendants enjoyed sovereign immunity; (5) that Lee's claims were barred under the MTCA since Lawson was an inmate at the time of his death; (6) that the Coahoma County defendants were performing discretionary functions at the time of the relevant events, thus barring the claims under the MTCA; and that (7) Lee had failed to state any claim upon which relief could be granted to her. On December 13, 2001, the circuit judge entered his 4-page Order Granting Motion to Dismiss. In his order, the trial judge addressed, inter alia, Lee's claims under the MTCA, Lee's claims for intentional torts, and the statute of limitations issue. The trial court concluded that Lee stood in the place of Lawson, and thus subject to all available defenses which could be asserted against Lawson had he lived. In taking this approach, the trial court concluded that the jail inmate exception found in Miss. Code Ann. § 11-46-9(1)(m) (Rev. 2002) applied as to the County and its employees acting within the course and scope of their employment or duties, thus leaving potentially viable only the assault and battery

---

[6]Although the motion does not refer to any particular rule as the basis for the motion, a careful reading of the motion makes it abundantly clear that this is a Miss. R. Civ. P. 12(b)(6) motion. Likewise, the parties in their briefs before this Court correctly direct us toward the applicable standard of review on Miss. R. Civ. P. 12(b)(6) motions to dismiss. To be absolutely cautious, however, it appears that the circuit judge had before him at the time of ruling on the motion, matters outside the circuit court pleadings, such as some of the federal court papers, including Judge Biggers's opinion and final judgment. Thus, pursuant to the provisions of Miss. R. Civ. P. 12(b)(6), the Comment thereunder, and our applicable case law, we will treat this motion to dismiss as a motion for summary judgment to be disposed of in accordance with the provisions of Miss. R. Civ. P. 56. *See Jones v. Jackson Pub. Schs.*, 760 So.2d 730 (Miss. 2000); *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 649 So.2d 179 (Miss. 1994). Finally, since Miss. R. Civ. P. 56 treatment is proper, any error committed by the learned circuit judge in ruling on this motion without a hearing was harmless beyond any doubt. *See Adams v. Cinemark USA, Inc.*, 831 So.2d 1156, 1162 (Miss. 2002). Whether the motion is treated as one under Miss. R. Civ. P. 12(b)(6) or 56, our standard of review is the same – de novo.

claim found in count I of the complaint. In that count, Lee alleged that the Coahoma County defendants, "acting intentionally and/or with reckless disregard for the safety of [Lawson], either beat [Lawson] to death or allowed him to be beaten to death" thus causing the defendants to have been "engaged in intentional criminal acts which were clearly outside the scope of the officers' employment with the [County]." While allowing count I of the complaint to remain viable inasmuch as the defendants did not enjoy MTCA immunity for these alleged intentional acts outside the scope of their employment, the trial court dismissed count I as barred by Miss. Code Ann. § 15-1-35 (Rev. 2003) (statute of limitations covering intentional torts), the minors' savings statute (Miss. Code Ann. § 15-1-59 (Rev. 2003)) notwithstanding. As an additional ground for dismissal, the trial court also found that the pendency of the prior state court and federal court actions surrounding Lawson's death did not toll the running of the applicable statutes of limitation.

¶12.    Lee has timely appealed to us seeking relief from the circuit court dismissal, and she raises the following issues for this Court's consideration:

I.      WHETHER THE CIRCUIT COURT ERRED IN FINDING THE MINORS SAVINGS CLAUSE CODIFIED AS MISS. CODE ANN. § 15-1-59 DID NOT APPLY TO AN ACTION FOR WRONGFUL DEATH WHERE THE DECEDENT DIED ON JUNE 4, 1999, AND THE MINOR PLAINTIFF FILED HER COMPLAINT IN THE PRESENT ACTION ON MARCH 28, 2001, AFTER A PREDECESSOR ACTION WAS DISMISSED WITHOUT PREJUDICE FROM FEDERAL COURT ON OCTOBER 23, 2000.

II.     WHETHER THE CIRCUIT COURT ERRED IN DISMISSING ALL BUT COUNT I OF THE PLAINTIFF'S COMPLAINT PURSUANT TO MISS. CODE ANN. § 11-46-9(1)(m) WHEN THE COMPLAINT CONTAINED ALLEGATIONS THAT THE DEFENDANTS' CONDUCT CONSTITUTED MALICE OR A CRIMINAL OFFENSE, AND SUCH ALLEGATIONS ARE SUFFICIENT TO SUPPORT A FINDING THAT AN EMPLOYEE'S ACTIONS WERE TAKEN

8

**OUTSIDE THE SCOPE OF EMPLOYMENT PURSUANT TO MISS. CODE ANN. §§ 11-46-5(2) and 11-46-7(2).**

## DISCUSSION

¶13. We apply a de novo standard when reviewing the granting of a Miss. R. Civ. P. 12(b)(6) motion. *Arnona v. Smith*, 749 So.2d 63, 65-66 (Miss. 1999). As such, we sit in the same position as did the trial court. The scope of review of a motion to dismiss is that the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of her claim. *Brewer v. Burdette*, 768 So. 2d 920, 922 (Miss. 2000). *See also* *Overstreet v. Merlos*, 570 So.2d 1196, 1197 (Miss. 1990); *Grantham v. Miss. Dep't of Corrections*, 522 So.2d 219, 220 (Miss. 1988). Additionally, as noted earlier, even though we treat the Rule 12(b)(6) motion as one filed under Rule 56, we still apply a de novo standard of review. *Quinn v. Estate of Jones*, 818 So.2d 1148, 1150 (Miss. 2002). *See also* *Baptiste v. Jitney Jungle Stores of Am., Inc.*, 651 So.2d 1063, 1065 (Miss. 1995) (citing *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 63 (Miss. 1988)).

¶14. The complaint filed by Lee on March 28, 2001, alleged seven counts against the county and the sheriff and his employees in both their official and individual capacities, including a claim for assault and battery and a claim for wrongful death. However, Lee brought all of the claims under the auspices of the Mississippi wrongful death statute, Miss. Code Ann. § 11-7-13 (Supp. 2003). A wrongful death action is a derivative action brought by the beneficiaries who are subject to all of the defenses that would have been available against the decedent. *Choctaw, Inc. v. Wichner*, 521 So. 2d 878, 882 (Miss. 1988).

¶15. We will address these issues in a somewhat different order and fashion than Lee presents them to us.

¶16.    Miss. Code Ann. § 11-46-9(1)(m) provides in pertinent part:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed;

First, there is no doubt that the jail inmate provisions of the MTCA apply in this case as to any non-intentional/non-criminal acts alleged to have been committed upon inmate Lawson by the Sheriff and/or his deputies while in the course and scope of their employment with Coahoma County. *Conrod v. Holder*, 825 So.2d 16, 18-19 (Miss. 2002); *Liggans v. Coahoma County Sheriff's Dep't*, 823 So.2d 1152, 1154-56 (Miss. 2002); *Wallace v. Town of Raleigh*, 815 So.2d 1203, 1207-09 (Miss. 2002).  Thus, while the trial court correctly dismissed the claims for alleged negligent acts by the employees, the trial court erred to the extent that it dismissed all but count I of the complaint, keeping in mind that in each count of the complaint, Lee realleged and readopted all previous allegations in the complaint, which would include the allegations of intentional criminal acts.  Thus as to these intentional acts, Lee, for and on behalf of her daughter and Lawson's sole wrongful death beneficiary, Emily, still had viable claims, not under the MTCA, but under our wrongful death statute. *See* Miss. Code Ann. §§ 11-46-5(2) & -7(2).  However, this does not end the inquiry as to whether Lee is still in court.

¶17.    We now consider the statute of limitations issue.

¶18.    First of all, we must keep in mind that Lawson's sole wrongful death beneficiary, his daughter, Emily, is a minor.  Mississippi has a minors' savings statute, Miss. Code Ann. § 15-1-59 (Rev. 2003), which provides:

> If any person entitled to bring any of the personal actions mentioned shall at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the action within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.

The trial court held that this statute only applied to actions mentioned in Chapter One, Title 15 of the Mississippi Code, *Cole v. State*, 608 So. 2d 1313 (Miss. 1992), thus finding Miss. Code Ann. § 15-1-59 did not apply to wrongful death actions. *Arender v. Smith County Hosp.*, 431 So. 2d 491 (Miss. 1983). However, as Lee correctly points out, in *Thiroux v. Austin*, 749 So. 2d 1040 (Miss. 1999), this Court undermined the *Arender* decision.

> In *Arender v. Smith County Hosp.*, 431 So.2d 491 (Miss. 1983), this Court held that the minors saving clause would not apply to a wrongful death claim. Arender erroneously relied on the 1895 case of *Foster v. Yazoo & M.V.R. Co.*, 72 Miss. 886, 18 So. 380 (1895). *Foster*, in finding that the savings clause did not apply to a wrongful death action, interpreted a predecessor wrongful death statute containing its own statute of limitation, and a predecessor savings clause with slightly different wording than the one applicable in *Arender*. The savings clause at issue in *Foster* applied to "any of the personal actions *before mentioned*." Miss. Code of 1892 § 2746 (emphasis added). Therefore, the Court reasoned that it did not apply to a wrongful death action, as the wrongful death statute was not "before mentioned." At that time, the wrongful death cause of action was provided its own statute of limitation, which did not include a savings clause for minors. On the contrary, the current wrongful death statute, and the one in effect at the time of *Arender*, does not contain its own statute of limitation. Therefore that statute is subject to the provisions regarding limitations of actions in Title 15 of the Mississippi Code. *See* Miss. Code Ann. § 11-7- 13 (Supp. 1999). Also, the savings clause interpreted in *Foster* no longer contains the phrase "before mentioned" as it did at the time of *Foster*, which limited its application to the actions provided for in the same Chapter. **There is no question now that the savings clause, set out in § 15-1-59 of the Mississippi Code, applies to a wrongful death action.**

*Thiroux*, 749 So. 2d at 1041 (emphasis added).

¶19.    Because this Court has held the minors' savings clause does toll the statute of limitations on a wrongful death action, the trial court erred in finding § 15-1-59 did not apply to wrongful death actions.[7]

¶20.    Our recent decision in *Curry v. Turner*, 832 So.2d 508 (Miss. 2002), is also applicable here. In *Curry*, Hart Turner killed Everett Curry by shooting Curry in the head execution-style while Curry was pumping gas at a convenience store which Turner and another man had decided to rob. The thrust of our decision addressed Miss. R. Civ. P. 15 amendments and whether an amended complaint related back to the date of the original pleading under Miss. R. Civ. P. 15(c) for the purpose of tolling the applicable statute of limitations. In *Curry*, we discussed *Thiroux* and *Arender* and then we stated:

> It stands to reason that the wrongful death statute's lack of a savings clause is also no longer a viable excuse to preclude the use of § 15-1-59 by Everett Curry's minor children as the *Thiroux* court found that the minor savings statute applied. However, the *Thiroux* majority did not address the significance of the wrongful death statute's requirement that there only be one suit for recovery. Nor did the majority address whether the children's guardian was a person *in esse*, allowing the statute of limitations to run against him as representative of the minor children's interest (footnote omitted).
>
> ****
>
> The plain language of the wrongful death statute §11-7-13 sets it at odds with the minors savings statute §15-1-59. Conceivably, the minors savings statute would allow for two groups of plaintiffs to file suits at two separate times for damages caused by one event: 1)

---

[7]Had there still been viable claims under the MTCA, Emily would have been protected under the recently amended statute. Miss. Code Ann. § 11-46-11(4) provides:

> (4) From and after April 1, 1993, if any person entitled to bring any action under this chapter shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the action within the time allowed in this section after his disability shall be removed as provided by law. The savings in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.

The amendment notes under Miss. Code Ann. § 11-46-11 state that "[t]he 2000 amendment added (4). The 2002 amendment substituted 'April 1, 1993' for 'May 15, 2000' in (4)."

those plaintiffs of majority age and sound mind within the statute of limitations and 2) those plaintiffs protected by the savings statute when their disability is removed or they reach the age of majority. This could result in a substantial period of time elapsing between the two suits. The wrongful death statute requires that only one suit be brought to recover damages for the wrongful death of the deceased.

****

Betty Curry is not only the wife of the deceased, she is his personal representative as administratrix of his estate. The style of this case indicates it was her intention to bring this suit on behalf of all his wrongful death beneficiaries. The original and proposed amended complaint seek damages for all beneficiaries and not just for herself. The facts of *Arender* are closer to the facts in the instant case than those in *Thiroux*. We therefore conclude that the trial court's ruling that she represented the interests of their minor children, as the estate's administratrix and as their mother, for purposes of counting the statute of limitations against them, is affirmed. While this is a difficult conclusion, we are convinced the provisions in the wrongful death statute and the minors savings statute are at irreconcilable odds with one another where there exists a person qualified under the wrongful death statute to bring suit. This conclusion is reinforced by the wrongful death statute's requirement that one suit be brought for damages from wrongful death. A common sense reading of the wrongful death statute indicates the statute of limitations runs against both the personal representative of the deceased and the deceased's children. Since the amended complaint was filed after the statute of limitations had run, the children's claims, like the estate's and their mother's, are barred by the statute of limitations.

832 So.2d at 515-17. Turning to the case sub judice, Susan Renee Lee, like Betty Curry, is a person *in esse*. Betty Curry was not only the wife of the deceased, she was the deceased's personal representative, she was the administratrix of her husband's estate, and she was the natural mother of their two minor children, who, along with Betty Curry, constituted all the wrongful death beneficiaries of the deceased. Susan Renee Lee is the natural mother of Emily, who is the sole wrongful death beneficiary of Lawson. After Lee was substituted in the original state court action which was removed to federal court, the case was styled in part, "Susan Renee Lee, Administratrix of the Estate of Randy C. Lawson and on behalf of all wrongful death beneficiaries." By that time, Lee had been substituted as administratrix of Lawson's estate and appointed general guardian over Emily's person and estate in separate causes in the Chancery Court of Coahoma County. Thus, as in *Curry*, the statute of limitations in our case today runs against both

13

Lee and Emily. No doubt, Emily, because of her disability of minority, was protected under both Miss. Code Ann. §§ 11-46-11(4) & 15-1-59 until the suit was initially filed in her behalf. That action, however, commenced the running of the applicable statute(s) of limitations concerning subsequently filed suits arising from the same cause of action.[8]

¶21.   Inasmuch as we have now determined that Lee's claims arising from alleged non-intentional acts of the Coahoma County defendants were barred by Miss. Code Ann. § 11-46-9(1)(m), and that Emily was no longer protected under the minors savings statute, we must now determine which statute of limitations applies to claims arising from Lee's claims of intentional/criminal acts allegedly committed upon Lawson by the Coahoma County defendants. Is it Miss. Code Ann. § 15-1-49 (the three-year "catch-all"

---

[8]We are not unmindful of the existence of Miss. Code Ann. § 15-1-69 (Rev. 2003), which states:

> If in any action, duly commenced within the time allowed, the writ shall be abated, or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if, after verdict for the plaintiff, the judgment shall be arrested, or if a judgment for the plaintiff shall be reversed on appeal, the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit, or after reversal of the judgment therein, and his executor or administrator may, in case of the plaintiff's death, commence such new action, within the said one year.

However, the reason we have not thus far addressed this statute is because Lee has not. In her notice of appeal, Lee asserted "[t]he Circuit Court also held that Section 15-1-69 was not applicable and that the one year statute of limitations was not tolled during the pendency of a previous action which was dismissed without prejudice." First of all, we have meticulously searched the record, and we find no reference to § 15-1-69 by the circuit judge. Secondly, this one statement in her notice of appeal is the last time Lee mentions this issue. Her brief makes no mention of Miss. Code Ann. § 15-1-69, and although the defendants' brief does mention § 15-1-69, Lee, in her reply brief, chooses not to address this statute. In their brief, the defendants state that "the federal district court's disposition was clearly 'on the merits' and was not a dismissal 'as to form' so as to render the prior disposition subject to Miss. Code Ann. § 15-1-69." In referring to our earlier recitation of Judge Biggers's decision in the federal district court case, we agree with the position taken by the Coahoma County defendants. Lee evidently has no disagreement on this point since she chose not to address it in her initial brief, nor respond to the defendants' position on this point when given the opportunity to do so in her reply brief.

14

statute), or Miss. Code Ann. § 15-1-35 (the one-year statute for intentional torts)? We have previously addressed this precise issue. In **Thiroux**, we stated:

> We note that the parties in this case have concluded that the applicable statute of limitation is that found in Miss. Code Ann. §15-1-49 (1995), the general three-year statute of limitation applied to "all claims for which no other period of limitations is prescribed." However, a wrongful death action, since it is predicated on an underlying tort, is limited by the statute of limitation applicable to the tort resulting in the wrongful death. In this case, the underlying tort is one of assault and battery (murder), which cause is limited to a one-year period. Miss. Code Ann. §15-1-35 (1995); *see Veselits ex rel. Cruthirds v. Veselits*, 653 F.Supp. 1570, 1575 (S.D. Miss.), *aff'd on other grounds*, 824 F.2d 391 (5th Cir. 1987).

749 So.2d at 1042. There can thus be no doubt that Lee's wrongful death action based on the alleged intentional criminal acts committed upon the person of Lawson by the Coahoma County defendants, inasmuch as it is predicated on an intentional tort, is governed by the one-year statute of limitation.

¶22. Finally, Lee argues that the pendency of the federal court action tolled the statute of limitations. The County argues the trial court correctly held that the pendency of a prior action does not toll the running of the statute of limitations applying the law of *Smith v. Copiah County*, 232 Miss. 838, 100 So. 2d 614 (1958); *W.T. Raleigh Co. v. Barnes*, 143 Miss. 597, 109 So. 8 (1926); and *Nevitt v. Bacon*, 32 Miss. 212 (1856). But for the existence of one fact, Lee would prevail on this issue. *See Boston v. Hartford Acc. & Indem. Co.*, 822 So.2d 239, 248 (Miss. 2002); *Norman v. Bucklew*, 684 So.2d 1246, 1256 (Miss. 1996). However, our decisions in *Boston* and *Norman* do not aid Lee in her case. Although the causes of action in both *Boston* and *Norman* accrued prior to the enactment of the MTCA, this is not what defeats Lee's claims inasmuch as we have already determined that the MTCA is not applicable to Lee's intentional tort claims.

15

¶23.    *Norman* involved, inter alia, a malicious prosecution claim which was filed in federal court, dismissed without prejudice, and then refiled in state court. *Boston* involved a wrongful death claim commenced in state court subsequent to a federal court dismissal of a complaint which had alleged both federal and state claims against the sheriff and others due to the death of a jail detainee. In 1987, Boston filed her initial federal court action resulting in the subsequent dismissal of her state law claims without prejudice. In 1993, Boston filed another federal court action which was also dismissed without prejudice as to the state law claims. In 1995, Boston filed her state court action for the jail detainee's alleged wrongful death which had occurred in 1987. The state court dismissed Boston's complaint for several reasons, one of which was the running of the applicable statute of limitations which had not been tolled based on the pendency of the federal court actions. On this issue, this Court stated:

> In accordance with this Court's determination in *Norman*, we conclude that the six (6) year statute of limitations was tolled while the case was in federal court and that the trial court erred in determining that Boston's claims were time-barred.

822 So.2d at 248.

¶24.    However, in the case before us today, Lee, while being given the opportunity to amend her federal court pleadings, chose instead to file a new state court action alleging for the first time various intentional torts against the Coahoma County defendants. It must be remembered that in the initial state court action which was removed to federal court, the complaint alleged negligence by the Coahoma County defendants for failing to prevent Lawson's suicide. We do know from Judge Biggers's opinion of August 15, 2000, that this complaint was later amended during the pendency of the federal court action so as to substitute Lee as a party plaintiff in that cause. While there is no copy of the federal court amended complaint in the record before us, we do have Judge Biggers's references to the amended complaint as gleaned from his opinion:

16

The undersigned has carefully reviewed the amended complaint and fails to find where the plaintiff has alleged any claims under §1983 against either the sheriff or the county. The only clear facts alleged in the complaint are that certain unnamed deputies may have beaten the plaintiff's decedent to death, and neither Sheriff Thompson nor the county can be held liable for the deputies actions under 42 U.S.C. §1983.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff here does not allege that Thompson watched and did nothing as his deputies beat Lawson, or that he was informed of the beating and did nothing, or that he had any personal involvement in Lawson's arrest or detention.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The amended complaint in this case is wholly devoid of any factual detail. There are no facts from which to base a claim that Thompson had anything to do with the beating/suicide.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The court further finds that plaintiff has not pled sufficient facts to support her claim against Coahoma County for a custom or policy regarding the circumstances resulting in the beating of Lawson or the alleged indifference to his suicide.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff asserts that Miss. Code Ann. §11-46-9(1) specifically excludes employees from the shield of immunity who are not acting within the scope of their employment which is defined in §11-46-9(2) [sic] as any conduct which may constitute "fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." As stated <u>supra</u> in the discussion of federal claims, the complaint fails to allege any specific actions by the Sheriff either malicious or not that would support a cause of action.

¶25. Under the facts of this case, Lee has simply waited too long to refile a new state court action raising for the first time various claims of intentional torts allegedly committed by Sheriff Thompson and the other Coahoma County defendants.

¶26. In *Cole v. State*, 608 So. 2d 1313 (Miss. 1992), we stated the clear purpose of statutes of limitations:

The primary purpose of statutory time limitations is to compel the exercise of a right of action within a reasonable time. These statutes are founded upon the general experience of society that valid claims will be promptly pursued and not allowed to remain neglected. They are designed to suppress assertion of false and stale claims, when evidence has been lost, memories have faded, witnesses are unavailable, or facts are incapable of production because of the lapse of time.

Accordingly, the fact that a barred claim is a just one or has the sanction of a moral obligation does not exempt it from the limitation period. These statutes of repose apply

with full force to all claims and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a given case. The establishment of these time boundaries is a legislative prerogative. That body has the right to fix reasonable periods within which an action shall be brought and, within its sound discretion, determine the limitation period.

*Id*. at 1317-18. Thus, the trial court properly dismissed the complaint filed on March 28, 2001.

¶27. While the trial court correctly dismissed the claims based on the alleged non-intentional acts of the Coahoma County defendants under the provisions of the MTCA, and correctly kept viable the intentional tort claims in count I of the complaint, the trial court incorrectly dismissed other claims which remained viable under the wrongful death statute based on the alleged intentional acts of the Coahoma County defendants. Certainly, under the minors savings statute, Emily was protected; however, once the first wrongful death suit was commenced by the filing of the state court complaint on June 16, 1999, Emily no longer enjoyed the protection of the minors savings statute since there could be but one cause of action under Miss. Code Ann. § 11-7-13. Additionally, for the reasons stated, once the original state court action was commenced, Emily was governed by the same statute of limitations as her mother. Lee had her chance to pursue the wrongful death claim in behalf of Emily. She timely filed her suit. It was removed to federal court. She amended her complaint. The federal judge dismissed her claims without prejudice, granting her thirty days to amend her complaint. She chose instead to commence a new action in state court, alleging, inter alia, new claims of various intentional torts allegedly committed by the Coahoma County defendants. This new state court action was commenced 663 days after the cause of action accrued and 297 days after the applicable one-year statute of limitations had run.

## CONCLUSION

¶28. We are confronted today with an absolutely tragic death of a young man while incarcerated in a county jail on domestic disturbance charges – an event which consequentially inflicts extreme grief and

18

hardship on innocent family members and friends. We are also not unmindful of the serious allegations contained in the pleadings, all of which we are required to accept as true for the purposes of deciding the propriety of the trial court's grant of dismissal. However, Lee, and thus, Emily, have had their day in court. Our interpretation of clear legislative intent based on the unambiguous provisions of applicable statutes and our application of prior case law guide us unhesitatingly to the conclusion we reach today. Because Lee's negligence claims were barred by the jail inmate exemption of the MTCA and the one-year statute of limitations had run on Lee's intentional tort claims, the trial court properly dismissed this action. Therefore, the judgment of dismissal of the Circuit Court of Coahoma County is affirmed.

¶29.    **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND EASLEY, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶30.    The majority erroneously finds that Miss. Code Ann. § 11-46-9(1)(m) (Rev. 2002) precludes Emily's claims since her father was an "inmate" at the time of the alleged acts of negligence and that the savings clause found in Miss. Code Ann. § 15-1-69 (Rev. 2003) is not applicable. Section 11-46-9(1)(m) does not preclude Emily's negligence claims as her father was not a "convicted" criminal classifying as an "inmate" within the statute's express language. Additionally, the savings clause found in Section 15-1-69 is applicable and allowed Emily one year to refile her action in state court. Lastly, Emily's claims for loss of society and companionship are personal to her and not her father; therefore, any procedural impediments which restrict her father's possible claims under the MTCA do not apply. For these reasons, I dissent.

¶31.    Section 11-46-9(1)(m) provides that:

(1)        A government entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

> (m) Of any claimant who at the time the claim arises is **an inmate** of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

(emphasis added). Randy Lawson, Emily's father, was not an "inmate" at the time of the alleged acts of negligence. He was only a detainee being held on "possible" charges of assault and battery. At the time of his detention, Lawson had not been formally charged with any crime and had certainly not been tried and convicted. Lawson was not an "inmate" within the meaning of Section 11-46-9(1)(m); therefore, it has no application here.

¶32.     The savings clause in Section 15-1-69 is applicable; therefore, Emily had one year from the federal court's dismissal of her action for lack of proper forum to institute the present state court action. Regardless of whether Emily alleged new causes of action in addition to those in the federal suit, she is still entitled to the protections of Section 15-1-69. As long as Emily's action in federal court was timely filed, then the running of the statute of limitations during its pendency is of no consequence. ***Boston v. Hartford Acc. & Indem. Co.***, 822 So.2d 239 (Miss. 2002); ***Norman v. Bucklew***, 684 So.2d 1246 (Miss. 1996).

¶33.     Additionally, Section 15-1-69 is a procedural statute and not a substantive statute of limitations. Therefore, the mandates of the Mississippi Tort Claims Act ("MTCA") with regard to the imposition of an "exclusive" statute of limitations are not disturbed. Miss. Code Ann. § 11-46-11 (Rev. 2002). Contrary to the majority's assertions, Section 15-1-69 does not alter or extend the statute of limitations provided for in Section 11-46-11 of the MTCA. Section 15-1-69 merely provides a procedural remedy for persons who erroneously chose the wrong forum. "The primary purpose of statutory time limitations is to compel

20

the exercise of a right of action within a reasonable time." ***Cole v. State***, 608 So.2d 1313, 1317 (Miss. 1992). In line with this reasoning, the mandates of Section 15-1-69 do not conflict with the statute of limitations provided for in the MTCA. Application of Section 15-1-69 does not extend the statute of limitations or provide an unreasonable time within which the plaintiff may exercise his rights. In fact, under the present circumstances, since the federal action was timely filed, the County and other defendants were already on notice of Emily's potential claims.

¶34. Emily's claims for loss of society and companionship are personal to her and not her father; therefore, any procedural impediments which restrict her father's possible claims under the MTCA do not apply. This Court has always found claims for loss of society and companionship to be rightfully in the hands of the injured person and/or the deceased's heirs. ***Choctaw, Inc. v. Wichner***, 521 So.2d 878, 880-82 (Miss. 1988). The action is personal in nature. Although several defenses which may be applicable against the injured or deceased person may also be asserted against their heirs, there is no indication that the "inmate limitation" in the MTCA should apply to Emily's personal claims for relief.

¶35. Contrary to the majority's assertions, Section 11-46-9(1)(m) does not bar Emily's claims regarding the negligent acts which caused her father's death. Furthermore, Emily's refiling in state court was timely and was not barred by the statute of limitations as Section 15-1-69 provided her with one year from the dismissal in federal court to refile her action. Accordingly, I would reverse the trial court's judgment and remand this case for further proceedings. For these reasons, I dissent.